Richard C. LEDFORS and Deborah Led-
fors, individually and as guardians ad
litem on behalf of their minor son
Richard Todd Ledfors, Plaintiffs and
Appellants,

v.

EMERY COUNTY SCHOOL DISTRICT,
Brent Arnold and Thomas Burr, indi-
vidually and as employees of Emery
County School District, Brett Payne
and Bert W. Sparks, individually, and
John Does I through V, Defendants and
Appellees.

No. 900503.

Supreme Court of Utah.

March 19, 1993.

R. Paul Van Dam, Atty. Gen., Debra J.
Moore and Reed M. Stringham, III, Asst.
Attys. Gen., for Arnold, Burr, and Emery
County School Dist.

Joanne Pappas White, Price, for the Led-
forses.

ZIMMERMAN, Justice:

Richard C. and Deborah Ledfors appeal
from a grant of summary judgment dis-
missing the Emery County School District
as a party to their negligence suit. The
court ruled that section 63–30–10(1)(b) of
the Utah Governmental Immunity Act,
Utah Code Ann. § 63–30–10(1)(b) (1989)
(now codified at § 63–30–10(2)),[1] immunized
the school district from a suit arising out of
a battery of one of its students. Plaintiffs
claim that in so ruling, the district court
erred. We disagree and affirm.[2]

When reviewing a grant of summary
judgment, we consider the facts alleged
and all reasonable inferences fairly arising
therefrom in a light most favorable to the
nonmoving party. *Estate Landscape &
Snow Removal Specialists, Inc. v. Moun-
tain States Tel. & Tel. Co.*, 844 P.2d 322,
323–24 (1992). We state the facts here in
accordance with that view. *Owens v. Gar-
field*, 784 P.2d 1187, 1188 (Utah 1989). We

---

1. The provisions of the Utah Governmental Im-
munity Act relevant to this case were amended
and recodified in 1991, after the Ledforses com-
menced their suit. *See* 1991 Utah Laws ch. 76,
§ 4, ch. 248, §§ 6–7. The provisions controlling
our decision, however, have remained substan-
tively the same. We cite to the Act as codified
in 1989 unless indicated otherwise.

2. The trial court also dismissed the school prin-
cipal and the physical education teacher as par-
ties to the suit. The Ledforses do not contest
the dismissal of these defendants. We therefore
do not address this issue.

review the trial court's interpretation of law for correctness. *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989).

Richard C. and Deborah Ledfors are the parents of Richard Todd Ledfors ("Richie"), a minor. The Ledforses brought this suit individually and as Richie's guardians ad litem. At all relevant times, Richie was attending Emery County High School. In January of 1989, he complained to the school principal that two fellow students had assaulted him several times. Principal Brent Arnold repeatedly assured Richie that he would take care of the problem. The record does not reveal what steps, if any, the principal took to fulfill those assurances. On February 22nd, Richie was attending his regularly scheduled physical education class. Richie's teacher, Thomas Burr, divided the class into two groups: One played dodge ball in the smaller gym, and the other played floor hockey in the larger gym. No teacher or school employee supervised the group in the smaller gym, the group to which Richie was assigned.

During this class period, the two students who had assaulted Richie earlier in the year were roaming the school halls. They entered the gym where Richie's group was playing and viciously beat Richie. During the beating, Richie's classmates tried unsuccessfully to find a teacher or school employee to intervene. When help finally came, Richie was transported by ambulance to Castleview Hospital, where he was hospitalized for several days with injuries to his head, abdomen, and back.

The Ledforses sued the two students for battery and the school district, the principal, and the physical education teacher for negligence in failing to supervise Richie's physical education class and in allowing the two students to roam the halls. The school district, the principal, and the physical education teacher moved for dismissal. The trial court treated the motion to dismiss as a motion for summary judgment under rule 12(c) of the Utah Rules of Civil Procedure. Utah R.Civ.P. 12(c); *see id.* 56(c). It held that these defendants were immune from

suit under section 63–30–10(1)(b) of the Utah Governmental Immunity Act. Utah Code Ann. § 63–30–10(1)(b) (1989) (now codified at § 63–30–10(2)).

The Ledforses appealed the trial court's interlocutory order dismissing the school district, but this court dismissed the appeal for lack of jurisdiction. We found that the order was not final because other defendants and claims remained below and the trial court had not certified the order under rule 54(b) of the Utah Rules of Civil Procedure. Utah R.Civ.P. 54(b). The trial court later certified the order under rule 54(b), and the Ledforses again appeal. Because the trial court properly certified the order at issue, we now address the merits of the appeal. *See generally Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099 (Utah 1991).

The Ledforses challenge the trial court's ruling on three grounds. They argue, first, that operation of a school is not a governmental function; second, that section 63–30–10(1)(b) should not immunize the government from suit for injuries arising out of a battery committed by a person who is not a government employee; and third, that their cause of action arises not from the battery, but from the government's breach of its duty to supervise and protect minor students in public schools. In essence, the Ledforses assert that it is poor social policy to immunize a school from liability for injuries incurred by students, who are required by law to attend that school, when those injuries result from the school officials' failure to take reasonable steps to protect students from the intentional torts of others.

Before moving to the merits, we note that any negligence action against a governmental entity raises traditional tort questions of duty and breach of duty, as well as independent questions relevant to governmental immunity. In some of our past cases in which we analyzed such a claim against a governmental entity, we have begun with a traditional tort analysis to determine whether the plaintiff had alleged a legally cognizable duty and breach of duty. If the plaintiff had not stated a

legally valid tort cause of action, we usually have declined to undertake the immunity analysis. *See, e.g., Rollins v. Petersen,* 813 P.2d 1156, 1162 (Utah 1991); *Owens,* 784 P.2d at 1189 n. 2; *Ferree,* 784 P.2d at 152; *see also Beach v. University of Utah,* 726 P.2d 413 (Utah 1986). At other times, we have performed the immunity analysis first, typically when it ended the inquiry. *See, e.g., Hilton v. Borthick,* 791 P.2d 504 (Utah 1989); *Birkner v. Salt Lake County,* 771 P.2d 1053, 1059 (Utah 1989); *Doe v. Arguelles,* 716 P.2d 279 (Utah 1985); *Connell v. Tooele City,* 572 P.2d 697 (Utah 1977); *Epting v. State,* 546 P.2d 242, 244 (Utah 1976).

Whatever the order in which we address the questions, it is important to keep in mind that a legislative waiver of immunity is *not* a legislative consent to liability. Even when immunity is waived, there can be no liability absent a breach of a common law duty owed to the plaintiff. *See Beach,* 726 P.2d at 415–16. Section 63–30–4(1) of the Utah Governmental Immunity Act is explicit on this point. That section states:

> Nothing contained in this chapter, unless specifically provided, shall be construed as an admission or denial of liability or responsibility insofar as governmental entities or their employees are concerned. If immunity from suit is waived by this chapter, consent to be sued is granted and liability of the entity shall be determined as if the entity were a private person.

Utah Code Ann. § 63–30–4(1) (1989) (now codified at § 63–30–4(1)(a) & (b)); *see also Rollins,* 813 P.2d at 1162 n. 3.

In our more recent cases, we have tended to address the traditional tort questions first, for the sake of analytical clarity and of keeping distinct the questions of immunity and liability. However, in the present case, the parties have made it easy for us to decide whether to begin with immunity or duty. They did not brief the issue of the school's common law duty to protect Richie from third persons, a duty that might arise out of the existence of some special relationship between him and the school. *See Rollins,* 813 P.2d at 1159–62; *Owens,* 784

P.2d at 1189; *Lamarr v. Union State Dep't of Transp.,* 828 P.2d 535, 538–40 (Utah Ct.App.1992). Consequently, we address only the issue of governmental immunity.

The Utah Governmental Immunity Act requires that we address three questions in determining whether a governmental entity is immune from suit. First, was the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3? Utah Code Ann. § 63–30–3 (1989) (now codified at § 63–30–3(1)). Second, if the activity was a governmental function, has some other section of the Act waived that blanket immunity? Third, if the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?

The Ledforses' first argument addresses the first question to be answered in our analytic model: Whether operating a school is a governmental function and therefore is granted governmental immunity under section 63–30–3. Although the Ledforses concede that the majority of states view operation of a school as a governmental function, they nonetheless ask this court to adopt the minority view and hold to the contrary. We decline this invitation.

Whether the operation of a school by a governmental entity is a governmental function is a settled issue in Utah. In 1987, the legislature broadened the definition of "governmental function" in section 63–30–2(4) to include all governmental operations that under our prior case law construing the pre–1987 statutory language, conceivably could have been characterized as ineligible for immunity. Comparing the language in our pre–1987 case law with the language of the 1987 amendment leaves no doubt that our pre–1987 cases were the target of this amendment. *Compare Thomas v. Clearfield City,* 642 P.2d 737, 738–39 (Utah 1982) *and Johnson v. Salt Lake City Corp.,* 629 P.2d 432, 434 (Utah 1981) *and Standiford v. Salt Lake City*

*Corp.*, 605 P.2d 1230, 1236–37 (Utah 1980) *with* 1987 Utah Laws ch. 75, § 2 (codified at Utah Code Ann. § 63–30–2(4)(a) (Supp. 1992)). The definition of "governmental function" in section 63–30–2(4)(a), added in 1987, reads:

> "Governmental function" means any act, failure to act, operation, function, or undertaking of a governmental entity whether or not the act, failure to act, operation, function, or undertaking is characterized as governmental, proprietary, a core governmental function, unique to government, undertaken in a dual capacity, essential to or not essential to a government or governmental function, or could be performed by private enterprise or private persons.

Utah Code Ann. § 63–30–2(4)(a). This language compels us to hold that operation of a public school is a governmental function under section 63–30–2(4)(a).

■ Because the operation of a public school is a governmental function under the definition section of 63–30–2(4)(a), that function is presumptively cloaked with immunity by section 63–30–3 of the Act, which states, "Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function...." *Id.* § 63–30–3 (1989) (now codified at § 63–30–3(1)). This language demonstrates that the legislature intended to retain immunity for all governmental functions unless some other part of the Act *specifically* waives the immunity. Thus, the next step in our analysis is to determine whether some other section of the Act waives the immunity of section 63–30–3. We find such a waiver in section 63–30–10, which waives immunity for injuries caused by a negligent act or omission of a governmental employee. That section states in pertinent part, "Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment...." *Id.* § 63–30–10(1) (1989) (now codified at § 63–30–10). Both defendants and the Ledforses agree that this language applies to the facts alleged before us.

This takes us to the third step of our analytical model: Does the Act contain an exception to the section 63–30–10(1) waiver that retains immunity against the particular claim asserted in this case? Exceptions to the provisional waiver of governmental immunity in section 63–30–10 are set forth in that section's subparts. Subpart (1)(b) is relevant to this appeal. It provides, in conjunction with the introductory language in paragraph (1), that immunity is waived "except if the injury arises out of: ... assault, battery, false imprisonment, [or] false arrest." *Id.* § 63–30–10(1)(b) (1989) (now codified at § 63–30–10(2)). This provision plainly does not allow suit against a governmental entity if the underlying "injury ... arises out of" an assault or battery.[3]

We applied the plain language of this subpart in *Maddocks v. Salt Lake City Corp.*, 740 P.2d 1337 (Utah 1987), to bar a suit in which the plaintiff alleged that he was wrongfully arrested by three Salt Lake City police officers, one of whom unlawfully beat him while the others negligently failed to intervene. In that case, we held that the "plaintiff's negligence claim arises out of battery and false imprisonment and is therefore not the sort of claim for which immunity has been waived." *Id.*

**3.** This court has applied the plain language of several of the other exceptions contained in the subparts of section 63–30–10 to bar claims for injuries that arose out of specifically excepted circumstances. For example, in *Connell*, the clerk for Tooele City failed to record properly the payment of the plaintiff's traffic tickets; as a result, the plaintiff was wrongfully arrested. We held that Tooele City was immune from suit for the clerk's negligence under section 63–30–10(2), which excepts injuries arising out of false arrest from section 60–30–10's waiver of immunity. 572 P.2d at 698–99 (construing Utah Code Ann. § 63–30–10(2) (1968)). Likewise, in *Epting*, where the deceased was killed by an escaped prisoner, we held that the state was immune from suit for its negligence in permitting the escape because the injuries either arose out of the exercise of a discretionary function and were immunized by subpart (1) of section 63–30–10 or arose out of the escapee's incarceration and were immunized by subpart (10). 546 P.2d at 244 (construing Utah Code Ann. §§ 63–30–10(1), (10) (1968)); *see also Hilton*, 791 P.2d 504; *Gillman v. Department of Fin. Insts.*, 782 P.2d 506, 510–12 (Utah 1989).

at 1340. We then concluded that the subpart (1)(b) exception to the general waiver of immunity barred the plaintiff's suit. By analogy, the injury that is complained of in the present case also "arises out of" the two students' battery of Richie. Therefore, subpart (1)(b) bars the Ledforses' negligence claim.

The Ledforses seek to distinguish *Maddocks*. First, they argue that in *Maddocks*, the assailant was a public official, while in the present case, the assailants were private individuals. They cite cases decided under the Federal Tort Claims Act for the proposition that this distinction makes a difference. Second, they argue that the injuries here arise from defendants' failure to protect and supervise Richie, not from the battery. We find both distinctions unpersuasive.

First, the Federal Tort Claims Act provision at issue in the federal cases the Ledforses cite differs from the Utah statute.[4] Our statute clearly states that the employment status of the assailant is irrelevant to the question of immunity. Subpart (1)(b) immunizes the negligence of the state employee when that negligence results in injuries "arising out of" an assault or battery. The determinant of immunity is the type of conduct that produces the injury, not the status of the intentional tort-feasor whose conduct is the immediate cause of the injury. Indeed, our prior cases have never recognized the distinction the Ledforses would have us adopt today; instead, we have always looked only at the cause of the injuries, not at the status of the injurer. *See, e.g., Hilton*, 791 P.2d at 505; *Gill-*

*man*, 782 P.2d at 510–12; *Connell*, 572 P.2d at 698–99; *Epting*, 546 P.2d at 244.

Second, we likewise find no merit in the Ledforses' argument that the injuries alleged here arose from the failure to supervise rather than from a battery. Again, our prior cases have looked to whether the injury asserted "arose out of" conduct or a situation specifically described in one of the subparts of 63–30–10; if it did, then immunity is preserved. We have rejected claims that have reflected attempts to evade these statutory categories by recharacterizing the supposed cause of the injury. For example, in *Sheffield v. Turner*, 21 Utah 2d 314, 445 P.2d 367 (1968), a prisoner claimed that injuries he suffered at the hands of other prisoners resulted from the state's negligent supervision of those prisoners, a claim very similar to the Ledforses' claim that Richie's injuries arose out of the school's negligent failure to supervise and protect Richie. The *Sheffield* court concluded that despite the fact that the injuries were alleged to arise out of a failure of supervision, the trial court correctly found that the state was immunized because the injury "arises out of incarceration of any person in any state prison." 21 Utah 2d at 316, 445 P.2d at 368 (quoting Utah Code Ann. § 63–30–10(10) (Supp.1967)).

In sum, the Ledforses ignore the fact that the structure of the Utah Governmental Immunity Act, especially section 63–30–10, focuses on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged. Because Richie's injuries arose out of a battery, we

---

**4.** The Federal Tort Claims Act ("FTCA") allows tort claims against government employees acting in the scope of their employment. 28 U.S.C. § 1346(b). However, section 2680(h) of the FTCA immunizes the government from "[a]ny claim arising out of assault [or] battery." *Id.* § 2680(h). Interpreting this language, the Second Circuit found that the FTCA preserves immunity only against claims arising out of assaults by government employees and poses no bar to claims arising out of assaults by nongovernment employees, where the negligence of the government employees allowed the assaults to occur. *Panella v. United States,* 216 F.2d 622, 624 (2d Cir.1954).

We disagree with the Ledforses' contention that section 2680(h) so resembles the Utah Act

that we should treat *Panella* as persuasive authority. Section 2680(h) immunizes "any *claim*" arising out of assault or battery, 28 U.S.C. § 2680(h) (emphasis added), suggesting that the FTCA immunizes suits only for assault or battery, not for governmental negligence. *See Panella,* 216 F.2d at 624–25. The Utah statute, on the other hand, preserves immunity for negligence of a governmental employee if "the *injury*" arises out of assault or battery, Utah Code Ann. § 63–30–10(1)(b) (emphasis added), making clear that the Utah Act immunizes negligence that results in injuries inflicted by assault or battery. For this reason, we find section 2680(h) to be inapposite and the cases interpreting it unpersuasive.

cannot ignore the plain meaning and fair import of section 63–30–10 of the Act.

In reaching this decision, we are sympathetic to Richie's plight. It is unfortunate that any parent who is required by state law to send his or her child to school lacks a civil remedy against negligent school personnel who fail to assure the child's safety at school. Nevertheless, the legislature has spoken with clarity on the question of immunity, and we are constrained by the plain language of the Act and our prior case law on this point. However, as we stated in *O'Neal v. Division of Family Services,* "Certainly, the legislature is not so constrained as we." 821 P.2d 1139, 1145 (Utah 1991). It is entirely within the legislature's power to permit all plaintiffs to whom the government owes a duty of care based on a special relationship to bring suit for injuries arising out of a breach of that duty. Or the legislature could tailor the waiver of immunity more narrowly; the state could permit suit by or on behalf of public school children injured as a result of such a breach of duty. Its power to craft waivers of immunity is far superior to ours.

We affirm the trial court's summary judgment.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.