**Wayne CHENEY, Plaintiff,**

v.

**J.N. STUDSTRUP, J.N. Sisneros, Jeffrey Smith, and Salt Lake County, Defendants.**

No. 2:97–CV–0402–S.

United States District Court,
D. Utah,
Central Division.

Sept. 30, 1998.

Walter F. Bugden, Tara Isaacson, Bugden Collins & Morton, Salt Lake City, UT, John L. McCoy, Salt Lake City, UT, for plaintiff.

Patricia J. Marlowe, County Office of Legal Counsel, Salt Lake City, UT, for defendants.

## MEMORANDUM DECISION

SAM, Chief Judge.

Before the court are: (1) plaintiff Wayne Cheney's objection to the removal of this case from state court by defendants J.N. Studstrup, J.N. Sisneros, Jeffrey Smith, and Salt Lake County and request for remand; (2) defendants' motion to dismiss plaintiff's state constitutional and negligence claims; and (3) plaintiff's motion for leave to file a second amended complaint. The court, having reviewed the memoranda submitted by the parties, will rule on the motions without the assistance of oral argument, pursuant to DUCivR 7–1(f).

## BACKGROUND

Plaintiff alleges that, on or about June 27, 1995 at approximately 1:00 a.m., he was a passenger in an automobile driven by Chet DeMille. After DeMille suddenly accelerated the vehicle, defendants Studstrup and Sisneros, Salt Lake County deputy sheriffs riding in an unmarked sheriffs' vehicle, moved behind the DeMille vehicle and turned

on their emergency lights. However, instead of stopping, DeMille accelerated, and defendants Studstrup and Sisneros gave chase at speeds of 80 miles per hour. Plaintiff asked DeMille to stop so plaintiff could get out, but Demille refused and continued to drive in such a manner that plaintiff was unable to exit the vehicle safely.

Ultimately, the DeMille vehicle became disabled, and defendants Studstrup and Sisneros and defendant Smith, another Salt Lake County deputy sheriff travelling in a separate vehicle, used their vehicles to block the DeMille vehicle. Defendant Sisneros then approached the passenger side of the DeMille vehicle with his gun drawn and ordered plaintiff and DeMille to raise their hands. Plaintiff complied. DeMille did not comply and, instead, began ramming his automobile into the defendants' vehicles. Defendant Sisneros then discharged his gun into the right passenger door of the DeMille vehicle. Defendants Studstrup and Smith also discharged their weapons at approximately the same time. One of the shots fired by defendants struck DeMille, and plaintiff received three gunshot wounds.

In May 1997, plaintiff brought suit in state court against all three deputies (the individual defendants) and Salt Lake County (the County), alleging: (1) violation of the fourth amendment, pursuant to 42 U.S.C. § 1983, through use of excessive and/or deadly force; (2) violation of the fourteenth amendment, pursuant to 42 U.S.C. § 1983, through denial of liberty without substantive due process of law; (3) deprivation of rights to due process of law, pursuant to Article I, Section 7 of the Utah Constitution; (4) deprivation of rights by being subjected to unnecessary rigor, pursuant to Article I, Section 9 of the Utah Constitution; and (5) negligence.

Defendants subsequently removed the case to federal court. Plaintiff objects to the removal and requests the court to remand the case to state court. Also, defendants move to dismiss plaintiff's third, fourth, and fifth claims. Finally, plaintiff moves for leave to file a second amended complaint.

## ANALYSIS

The court will address each of the three pending motions.

I. *Plaintiff's Objection to Removal and Request for Remand*

Plaintiff's first two causes of action allege violations of the fourth and fourteenth amendments to the United States Constitution and, thus, assert claims for which this court has original jurisdiction, based upon a federal question. *See* 28 U.S.C. § 1331 (1994) ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Moreover, "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." *See* 28 U.S.C. § 1441(b) (1994). Therefore, this case was properly removed from state court.

Plaintiff now objects to the removal, urges this court to remand the case, and suggests the court may remand pursuant to 28 U.S.C. § 1441(c) (1994) which provides as follows:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Plaintiff basically presents three arguments in support of his request for remand, none of which the court finds persuasive.

First, plaintiff contends remand is appropriate because both this court and the state court have concurrent jurisdiction over all of plaintiff's claims. Plaintiff, thus, argues this court should honor his decision to file suit in state court. *See Young v. Bd. of Educ. of Fremont County Sch. Dist.,* 416 F.Supp. 1139, 1141 (D.Colo.1976) ("We see no compelling reason to justify giving defendants, properly sued in a court of competent jurisdiction, the right to select the forum for adjudication of this case. Absent statutory prohibition, plaintiff's choice of a forum should be recognized by the court."). Even

plaintiff acknowledges, however, that *Young* expresses the minority view as "the majority of courts which have considered the choice of forum issue have concluded that the existence of concurrent jurisdiction, standing alone, is insufficient to defeat a defendant's right to removal granted under 28 U.S.C. § 1441." Memorandum of Law in Support of Plaintiff's Objection to Defendants' Notice of Removal at 3. Indeed the case law confirms that concurrent jurisdiction alone is insufficient to warrant remand.[1]

Second, plaintiff argues this court should remand because his state constitutional claims may be "separate and independent" from his federal claims. In *Alfalfa Cubes, Inc. v. Dutton*, 618 F.Supp. 1425 (D.Kan. 1985), the Kansas district court examined the meaning of the phrase "separate and independent", found in 28 U.S.C. § 1441(c), by looking to *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), the "seminal decision interpreting § 1441(c)." *Id.* at 1427. In *Finn,* the Court stated that " 'where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).' " *Id.* (quoting *Finn,* 341 U.S. at 14, 71 S.Ct. 534). The district court noted that "[c]laims are not 'separate and independent' simply because the petition contains separate prayers for relief; alternative prayers for relief; multiple theories of recovery; separate counts; claims with different requirements of proof; or allegations of joint, several, or joint and several liability." *Id.* Rather, " 'what should determine the applicability of § 1441(c), however many wrongs may comprise a particular suit, is whether those wrongs arise from an interlocked series of transactions, that is, whether they substantially derive from the same facts.' " *Id.* at 1428 (quoting *New England Concrete Pipe v. D/C Systems, Etc.*, 658 F.2d 867, 874 n. 12 (1st Cir.1981)). In the instant case, plaintiff sets forth a narrative concerning a chase and apprehension by authorities which culminated in his injuries. In the court's view, all of plaintiff's claims arise from the same circumstances and, applying the standards set forth above, his state claims are not "separate and independent" for purposes of § 1441(c).[2]

Finally, plaintiff submits remand to state court is warranted because his state claims may predominate in the case. Plaintiff, however, never explains precisely how his state claims may predominate the litigation. Moreover, plaintiff asserts not that his state claims *actually* predominate but only that such claims *may* predominate. Plaintiff notes merely that the "prohibition against unnecessary rigor contained in Article I Section 9 of the Utah Constitution will be a

---

1. *See, e.g., Williams v. Ragnone,* 147 F.3d 700, 702 (8th Cir.1998) (district court's reliance on concurrent jurisdiction of state and federal courts over section 1983 claims in remanding to state court "was misplaced"); *Dorsey v. City of Detroit,* 858 F.2d 338, 341 (6th Cir.1988) ("The weight of judicial authority supports the conclusion that 'a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited.' "); *Keil v. CIGNA,* 978 F.Supp. 1365, 1368 (D.Colo.1997) (When there are federal claims over which the federal court has original jurisdiction, "[t]he fact that state courts may have concurrent jurisdiction does not change this result so as to require remand to the state court."); *Gleichauf v. Ginsberg,* 859 F.Supp. 229, 231 (S.D.W.Va.1994) ("The great majority of courts addressing whether § 1983 claims are removable have concluded original jurisdiction precludes remand despite the concurrent jurisdiction of state courts."); *Pace v. Hunt,* 847 F.Supp. 508, 510 (S.D.Miss.1994) ("[T]he removal statute would be eviscerated if actions such as [those based on section 1983] were remanded to state court simply because such courts have concurrent jurisdiction."); *California Republican Party v. Mercier,* 652 F.Supp. 928, 933 (C.D.Cal.1986) (The argument that "since the federal civil rights statutes have been interpreted to create concurrent jurisdiction in both the federal and state courts, [a party's] choice of [the state] forum should not be disturbed" has only "scattered support.").

2. *See, e.g., Williams v. Huron Valley Sch. Dist.,* 858 F.Supp. 97, (E.D.Mich.1994) (plaintiff's claims of religious discrimination pursuant to state and federal laws, unlawful retaliation, and intentional infliction of emotional distress, stemming from her failure to obtain leave from employment for religious purposes all arose "from a common nucleus of operative facts" and were not "separate and independent" under section 1441(c)); *Kabealo v. Davis,* 829 F.Supp. 923, 926–27 (S.D.Ohio 1993) (RICO and state law claims were not "separate and independent" under section 1441(c) because "plaintiff relie[d] on the same recitation of facts for all counts of the complaint".), *aff'd,* 72 F.3d 129 (6th Cir.1995).

central legal theme in this lawsuit." Memorandum of Law in Support of Plaintiff's Objection to Defendants' Notice of Removal at 3. In the case at bar, plaintiff has alleged three state claims and two federal claims. "The difference of one claim does not constitute the requisite 'substantially predominate' factor in this case." *Williams v. Huron Valley Sch. Dist.*, 858 F.Supp. 97, 100 (E.D.Mich.1994). Furthermore, while plaintiff's state constitutional claims may indeed present "central legal themes", plaintiff's federal claims, nevertheless, "will be determined on the basis of the elements of a federal statute" and are not matters in which state law predominates. *Kabealo v. Davis*, 829 F.Supp. 923, (S.D.Ohio 1993), *aff'd*, 72 F.3d 129 (6th Cir.1995). The court, thus, is not convinced state claims so predominate in this case that remand is appropriate.

Accordingly, for all the reasons discussed above, the court declines to remand this case to state court.

## II. *Defendants' Motion to Dismiss*

The court will dismiss a complaint " 'only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.' " *Mascheroni v. Board of Regents of Univ. of Cal.*, 28 F.3d 1554, 1560 (10th Cir.1994) (quoting *Jacobs Visconsi & Jacobs v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir.1991)); *accord Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir.1994). In determining the sufficiency of a complaint, the court " 'must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.' " *Mascheroni*, 28 F.3d at 1560 (quoting *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991)); *accord Coosewoon*, 25 F.3d at 924.

Pursuant to Fed.R.Civ.P. 12(b)(6), defendants move to dismiss plaintiff's third, fourth, and fifth claims, i.e., plaintiff's state constitutional and negligence claims. The court will consider each of these claims.

### A. *Article I, Sections 7 and 9 of the Utah Constitution*

In plaintiff's third claim, he alleges he was "deprived of liberty without due process of law in violation of Article I, Section 7 of the Utah Constitution." [3] Complaint, ¶ 42. In plaintiff's fourth claim, he alleges he was "subjected to cruel and unusual punishment and unnecessary rigor in violation of Article I, Section 9 of the Utah State Constitution." [4] Complaint, ¶ 50. Plaintiff seeks to recover damages from the County under both of these claims. Defendants argue the County is immune from these claims pursuant to the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38 (1997).

In *Ledfors v. Emery County School District*, 849 P.2d 1162 (Utah 1993), the Utah Supreme Court applied the Utah Governmental Immunity Act by asking three questions: (1) "[W]as the activity the entity performed a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3?" (2) "[I]f the activity was a governmental function, has some other section of the Act waived that blanket immunity?" and (3) "[I]f the blanket immunity has been waived, does the Act also contain an exception to that waiver which results in a retention of immunity against the particular claim asserted in this case?" *Id.* at 1164. In the present case, the parties dispute neither that the individual defendants' activities were governmental functions subject to immunity nor that the blanket immunity has been waived for the negligent actions of those defendants committed within the scope of employment. Rather, the parties focus on the third step, i.e., whether governmental immunity has been waived or preserved under an exception to that waiver.

In determining whether there has been a waiver of immunity in this case, the parties look to Utah Code Ann. § 63–30–10 (section 63–30–10), which states, in relevant part:

3. "No person shall be deprived of life, liberty or property, without due process of law." UT Const. art. I, § 7.

4. "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor." UT Const. art. I, § 9.

*Immunity from suit of all governmental entities is waived* for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment *except if the injury arises out of,* in connection with, or results from:

. . .

(2) . . . *violation of civil rights.*

Utah Code Ann. § 63–30–10(2) (1997) (emphasis added). The Utah Governmental Immunity Act does not define "civil rights".

This court addressed the definition of "civil rights" for purposes of section 63–30–10(2) in *Adamson v. City of Provo,* 819 F.Supp. 934 (D.Utah 1993). In *Adamson,* the plaintiffs, city employees, sued the defendant city, in part under the Utah Constitution, for its failure to make apppropriate contributions to the plaintiffs' retirement program. *See id.* at 953. The defendant moved for summary judgment, arguing, in part, that the plaintiffs' state due process claim, pursuant to the Utah Constitution, was barred by governmental immunity, citing specifically to the civil rights provision of section 63–30–10(2). *See id.*

The court granted the defendant's motion on this basis, explaining as follows:

> The term "civil rights" has been defined as those civil liberties which are "[p]ersonal, natural rights guaranteed and protected by the Constitution." Black's Law Dictionary 223 (5th ed.1979); see also 15 Am.Jur.2d Civil Rights § 1 (1976) ("the term 'civil rights' refers to the enjoyment of such guaranties as are contained in constitutional or statutory law[.]"). Plaintiffs' claims under the Utah Constitution's Due Process Clause fall within the definition of "civil rights" guaranteed by the state constitution.

Because the State of Utah has not waived governmental immunity for such suits, Plaintiffs' claims are barred by the Utah Governmental Immunity Act.

*Id.* at 953–54. Defendants rely on *Adamson* in support of their position that plaintiff's state constitutional claims, for violation of due process rights and subjecting plaintiff to unnecessary rigor, are barred because they fall within this court's definition of civil rights in section 63–30–10(2).

Plaintiff, however, points to a more recent case from the Utah Supreme Court. In *Bott v. DeLand,* 922 P.2d 732 (Utah 1996), the Utah Supreme Court examined the interface between state constitutional claims and governmental immunity. The plaintiff, an inmate at the Utah State Prison, suffered a loss of vision and, ultimately, severe renal failure, rendering him dependent upon dialysis. *See id.* at 734–35. The plaintiff subsequently brought suit, in part, against the Department of Corrections' Executive Director and the Utah State Prison Medical Administrator, alleging a claim under the "unnecessary rigor" clause of the Utah Constitution and a claim under 42 U.S.C. § 1983 for violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See id.* at 735. A jury found in favor of the plaintiff, awarding him damages on his claim for violation of the state constitution. *See id.*

The plaintiff and the defendants appealed. On appeal, the defendants argued, in part, that the plaintiff's state constitutional claim was barred by governmental immunity. *See id.* In *Bott,* however, section 63–30–10(2) was not at issue. Rather, the parties focused on subsections 63–30–4(3) and (4)[5], another

---

5. Utah Code Ann. § 63–30–4 (1997) provides, in relevant part:

   (3) (a) Except as provided in Subsection (b), an action under this chapter against a governmental entity or its employee for an injury caused by an act or omission that occurs during the performance of the employee's duties, within the scope of employment, or under color of authority is a plaintiff's exclusive remedy.

   (b) A plaintiff may not bring or pursue any other civil action or proceeding based upon the same subjecoyee whose act or omission gave rise to the claim, unless:

   (i) the employee acted or failed to act through fraud or malice; or

   (ii) the injury or damage resulted from the conditions set forth in Subsection 63–30–36(3)(c).

   (4) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee may be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, unless it is established that the employee acted or failed to act due to fraud or malice.

part of the Utah Governmental Immunity Act. The defendants argued that subsections 63–30–4(3) and (4) would bar the plaintiff's state claim if plaintiff could not show the defendants acted with fraud or malice. *See id.* The plaintiff responded that applying subsections 63–30–4(3) and (4) to his state claim would violate the open courts clause of the Utah Constitution. *See id.* at 736.

The Utah Supreme Court agreed with the plaintiff that subsections 63–30–4(3) and (4) did not bar his state claim. *See id.* The court, however, did not base its decision on an analysis of the open courts clause. Instead, the court declined to apply those subsections "because they constitute an *unreasonable regulation* of Bott's article I, section 9 right to be free of 'unnecessary rigor.' " *Id.* at 736 (emphasis added). The court reasoned as follows:

> "[A]ny rule or regulation in regard to the remedy which does not, under pretense of modifying or regulating it, *take away or impair the right itself,* cannot be regarded as beyond the proper province of legislation." ... However, the legislature's "fraud or malice" standard contained in *subsections 63–30–4(3) and (4) impairs article I, section 9 rights because it does bar claims that would otherwise be allowed* ... Moreover, governmental immunity cannot apply where a claimant alleges that the state or a state employee violated his constitutional rights.

*Id.* (quoting 2 Thomas M. Cooley, Constitutional Limitations 756 (1927)) (emphasis added). Concluding it could not apply the "fraud or malice" provision of subsections 63–30–4(3) and (4) to bar the plaintiff's unnecessary rigor claim under article I, section 9 of the Utah Constitution, the court noted: " 'Constitutional rights serve to restrict government conduct. These rights would never serve this purpose if the state could use governmental immunity to avoid constitutional restrictions.' " *Id.* at 736–37 (quoting *Burdette v. State,* 166 Mich.App. 406, 421 N.W.2d 185, 187 (1988)).

In the case at bar, defendants assert both of plaintiff's state constitutional claims, for unnecessary rigor and lack of due process, are barred completely due to the governmental immunity provided by the civil rights provision of section 63–30–10(2). *Adamson*

appears to support this view, *see Adamson,* 819 F.Supp. at 953–54, but it predates *Bott.* Furthermore, because this is a matter of state law, the court finds the Utah Supreme Court's reasoning in *Bott* more compelling. Although not addressing section 63–30–10(2) specifically, the *Bott* court, nevertheless, expressed concern over, and indeed declined to apply, legislative restrictions in the Utah Governmental Immunity Act when such restrictions unreasonably regulated, impaired, or destroyed state constitutional rights. *See Bott,* 922 P.2d at 736–37. If "civil rights", as referenced in section 63–30–10(2), can be construed to include state constitutional rights, as the *Adamson* court found, then adopting the position urged by defendants would dictate barring all claims for violation of state constitutional rights due to governmental immunity. Such a conclusion does not harmonize with *Bott.* Accordingly, at this juncture, the court declines to dismiss plaintiff's state constitutional claims as barred by governmental immunity.

### B. *Negligence*

■ In his fifth and final claim, plaintiff contends the County is liable for the alleged negligence of the individual defendants. Again, the County argues it is immune from this claim pursuant to the Utah Governmental Immunity Act. Applying *Ledfors,* the parties again do not dispute that the individual defendants' activities were governmental functions for which immunity has been waived if committed within the scope of employment. Instead, the parties focus on whether governmental immunity has been waived or preserved under an exception to that waiver and turn again to section 63–30–10(2), which states, in relevant part:

> Immunity from suit of all governmental entities is waived for *injury proximately caused by a negligent act* or omission of an employee committed within the scope of employment *except if the injury arises out of,* in connection with, or results from:
>
> ...
>
> (2) *assault, battery, ....*

Utah Code Ann. § 63–30–10(2) (1997) (emphasis added). The parties dispute whether the actions of the individual defendants con-

stitute negligence, for which immunity is waived, or assault and battery, for which immunity is preserved.

In *Ledfors,* a minor child was beaten by other students while at school. His parents brought suit against the school district, the principal, and the teacher for negligence in failing to supervise the child's class. *See Ledfors,* 849 P.2d at 1163. The Utah Supreme Court determined the negligence claim was barred under section 63–30–10(2) because the injury at issue arose out of a battery. *See id.* at 1166–67. In arriving at this decision, the court noted: "[T]he structure of the Utah Governmental Immunity Act, especially section 63–30–10, focuses on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged." *Id.* at 1166. The court explained:

> [O]ur prior cases have looked to whether the injury asserted "arose out of" conduct or a situation specifically described in one of the subparts of 63–30–10; if it did, then immunity is preserved. We have rejected claims that have reflected attempts to evade these statutory categories by recharacterizing the supposed cause of the injury.

*Id.* Utah courts have consistently barred claims cast in negligence which actually arose from assault and battery.[6]

The County asserts that, although plaintiff has pleaded a negligence claim, plaintiff's injuries actually arose out of and result from assault and battery. Therefore, the County argues, plaintiff's negligence claim is barred. Plaintiff does not dispute that the County is immune from claims arising from assault and battery but notes that they constitute intentional torts. Plaintiff then responds that the individual defendants may have injured plaintiff accidentally and unintentionally. If so, plaintiff argues, the individual defendants did not have the requisite intent for their actions

to constitute assault or battery, and the negligence claim may, therefore, proceed. To this end, plaintiff notes that one basis for his motion to amend the complaint is to have the opportunity to allege with greater specificity that the shooting may have been unintentional.

In *Wright v. University of Utah,* 876 P.2d 380 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994), the Utah Court of Appeals addressed similar arguments. In *Wright,* the plaintiff brought suit against the university for injuries she received when a university employee "assaulted and struck" her. *See id.* at 381–82. The university responded by filing a motion to dismiss, claiming immunity under the assault and battery provision in section 63–30–10(2). *See id.* at 382. The plaintiff responded, in part, by arguing the assault and battery provision did not apply because the employee who attacked her, who apparently was autistic, may not have had the requisite mental intent to commit assault or battery. *See id.* The trial court granted the university's motion and dismissed the case with prejudice. *See id.*

On appeal, the Court of Appeals explained plaintiff's argument as follows: "Wright notes that assault and battery are intentional torts. Therefore, the argument continues, if the employee was unable to form the requisite intent for assault or battery, he cannot be said to have committed the same, and section 63–30–10(2) does not apply." *Id.* at 384. The Court of Appeals then noted the language in plaintiff's complaint, "assaulted and struck", expressed an intentional act only, and plaintiff had never amended her complaint to include additional allegations indicating something other than an intentional attack. Therefore, the court declined to address plaintiff's argument on the merits. *See id.* at 385–86.

---

6. *See, e.g., Wright v. University of Utah,* 876 P.2d 380, 383 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994) (plaintiff's claim for negligent hiring and supervision when defendant's employee "assaulted and struck" plaintiff was barred because injuries arose from assault or battery); *Higgins v. Salt Lake County,* 855 P.2d 231, 241 (Utah 1993) (plaintiff's negligence claim when mental patient stabbed plaintiff was barred because injuries arose from battery); *Maddocks v. Salt Lake City Corp.,* 740 P.2d 1337, 1340 (Utah 1987) (plaintiff's claim for negligence in failing to intervene when police officers beat plaintiff was barred because "plaintiff's negligence claim arises out of battery and false imprisonment and is therefore not the sort of claim for which immunity has been waived.").

The Court of Appeals, nevertheless, expressed its view concerning plaintiff's argument, albeit in dicta. The court stated:

> The University argues, and we agree, that even if Wright did amend her complaint to allege that the employee lacked the requisite intent for assault or battery, such amendment would be a fruitless, albeit creative, attempt to circumvent the clear language of section 63–30–10. Although no Utah cases have addressed this issue directly, federal courts have done so in suits involving the Federal Tort Claims Act (FTCA).

*Id.* at 386. The court noted that, due to the similarity between section 63–30–10(2) of the Utah Code and section 2680(h) of the FTCA, "we may look to federal cases for guidance on interpreting that section." *Id.* n. 11. The court then discussed several examples of FTCA cases wherein federal courts determined that governmental immunity did not rest on the mental state of the actor during the conduct in question. *See id.* at 386–87. Ultimately, the court concluded that "[n]othing in the [Utah Governmental Immunity] Act indicates that the distinction Wright champions was contemplated by the legislature to determine whether immunity exists under section 63–30–10(2). The focus is on the result, not the circumstances leading thereto." *Id.* at 387.

In the instant case, plaintiff alleges "[t]he conduct of the Deputy Defendants was negligent in that they breached their duty of care and/or disregarded a known or obvious substantial risk and it was foreseeable that the Plaintiff would be gravely injured by discharging their weapons." Complaint, ¶ 58. In view of *Ledfors* and other examples of Utah cases analyzing governmental immunity cited above, the court must consider the circumstances resulting in plaintiff's injury to determine whether the injury arose out of conduct included within section 63–30–10(2). As plaintiff was shot by defendant deputy sheriffs, the court finds plaintiff's injury arose from assault and battery. Therefore, the court believes plaintiff's negligence claim against the County is barred by the Utah Governmental Immunity Act and must be dismissed.

However, plaintiff seeks to amend his complaint to clarify his allegations to include that the actions of the individual defendants may have been unintentional. Plaintiff, thus, attempts to save his negligence claim by including the allegation that "[t]he conduct of the Deputy Defendants in shooting the Plaintiff may have been unintentional and accidental." Plaintiff's Proposed Second Amended Complaint, ¶ 58. Plaintiff further agrees to abandon his negligence claim if defendants acknowledge the shooting was intentional. The court finds *Wright* persuasive on the question of whether to permit plaintiff to amend his negligence claim. Although the Court of Appeals' discussion of this issue in *Wright* is technically dicta, it, nevertheless, is rather thorough and indicates, at the very least, the probable direction of Utah's appellate courts on this question.[7] As a result, the court is of the opinion that the proposed amendment of plaintiff's negligence claim would be futile and declines to permit it.

Accordingly, the court concludes plaintiff's negligence claim must be dismissed.

### III. *Plaintiff's Motion to Amend Complaint*

In his Motion for Leave to File a Second Amended Complaint, plaintiff seeks to amend his complaint: (1) to seek relief for personal liability against the individual defendants for the deprivation of plaintiff's state constitutional rights in his third and fourth claims, (2) to amend his negligence claim as dis-

---

7. *See Weiss v. United States,* 787 F.2d 518, 525 (10th Cir.1986) ("In predicting how a state's highest court would rule, federal courts must follow intermediate state court decisions, policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies."); *accord Taylor v. Phelan,* 9 F.3d 882, 887 (10th Cir.1993); *see also Jordan v. Shattuck Nat'l Bank,* 868 F.2d 383, 386 (10th Cir.1989) ("[i]n the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise.") (citation omitted); *but see Perlmutter v. United States Gypsum Co.,* 54 F.3d 659, 662 (10th Cir.1995) ("although we are not obligated to follow the pronouncements of lower state courts, 'in the absence of any compelling reason to disregard [them],' we follow decisions of the ... Court of Appeals as well.") (citation omitted).

**1286**

cussed above, and (3) to include the correct names of each of the individual defendants. Defendants do not oppose plaintiff's motion.

Based on the court's rulings outlined above, the court hereby GRANTS plaintiff's motion to amend insofar as he seeks personal liability for his state constitutional claims against the individual defendants and to correct the names of the individual defendants. The court DENIES plaintiff's motion insofar as he seeks to amend his negligence claim.

### CONCLUSION

In sum, the court declines to remand this case to state court and declines to dismiss plaintiff's two state constitutional claims. Furthermore, the court will allow plaintiff to amend his complaint to correct the names of the individual defendants and seek relief against them for plaintiff's state constitutional claims. The court, however, dismisses plaintiff's claim for negligence with prejudice. Accordingly, the case will proceed in this court upon plaintiff's federal claims and state constitutional claims only.