*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JON VAN DE GRIFT, et al.,
*Appellants,*
*v.*

STATE OF UTAH, et al.,
*Appellees*.

No. 20110994
Filed March 5, 2013

Third District, Salt Lake
The Honorable Paul G. Maughan
No. 110909827

Attorneys:

Marcus R. Mumford, Salt Lake City, for appellant

John E. Swallow, Att'y Gen., Peggy E. Stone, Asst. Att'y Gen.,
Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶1    Appellants, who were defrauded by an individual on parole from a Utah prison, appeal the district court's determination that the Governmental Immunity Act renders the State immune from Appellants' claims alleging negligent supervision of the parolee. We affirm.

## BACKGROUND

¶2    Appellants filed a complaint in district court alleging that "[t]he multi-state Madison Group [Ponzi] scheme, which defrauded Plaintiffs of over $27,000,000 . . . , was masterminded by Utah [convict] and parolee Richard Higgins while he was on parole . . . ." Mr. Higgins's conditions of parole prohibited him from leaving the state of Utah, handling other people's money, or being self-

employed. According to Appellants' complaint, "The State . . . did not adequately supervise Higgins, and, as a result, he was able to travel extensively, take in and defraud investors of millions of dollars, and execute a multi-state real estate investing scheme through . . . companies he owned and operated, that turned out to be a $60,000,000 . . . Ponzi scheme."

¶3    Appellants' complaint alleged causes of action against the State for negligent supervision, gross negligence, failure to warn, and negligent misrepresentation. The State filed a motion to dismiss based on governmental immunity. Utah Code section 63G-7-301(4) waives governmental immunity from suit if the injury is caused "by a negligent act or omission of an employee committed within the scope of employment." The State relied on subsection (5) of the Governmental Immunity Act, which lists exceptions to that waiver "if the injury arises out of, in connection with, or results from . . . deceit . . . [or] a misrepresentation by an employee whether or not it is negligent or intentional."[1]

¶4    Appellants responded that because immunity is an affirmative defense, it was procedurally inappropriate to raise it in a motion to dismiss. They further argued that the deceit exception to immunity should apply only to deceit by a government employee, not to deceit by a third party. Appellants conceded, however, that the State was immune from the cause of action for negligent misrepresentation by a State employee.

¶5    The district court granted the State's motion to dismiss. The court determined that the causes of action for negligent supervision, gross negligence, and failure to warn arose out of Mr. Higgins's deceit. Appellants filed a timely notice of appeal. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

---

[1] UTAH CODE § 63G-7-301(5)(b), (f). The State also argued that it was immune under the exception for injury arising out of "the incarceration of any person in any state prison, county or city jail, or other place of legal confinement." *Id.* § 63G-7-301(5)(j). The district court did not reach this issue and, although the State briefed it as an alternate ground for affirming the dismissal of Appellants' complaint, our analysis under the deceit exception renders it unnecessary for us to address the incarceration exception.

## STANDARD OF REVIEW

¶6   "A trial court's decision to dismiss a case based on governmental immunity is a determination of law that we afford no deference. . . . Because the propriety of a 12(b)(6) dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard."[2]

## ANALYSIS

¶7   Appellants argue that the district court erred when it rejected their arguments that subsection (b) of the Governmental Immunity Act does not apply to their case.  They also argue that the district court erred when it granted a motion to dismiss based on an affirmative defense.  We affirm the district court's dismissal of Appellants' complaint.

### I.  THE STATE IS IMMUNE UNDER THE UTAH GOVERNMENTAL IMMUNITY ACT'S DECEIT EXCEPTION

¶8   "Generally, to determine whether a governmental entity is immune from suit under the [Governmental Immunity] Act, we apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver."[3]  The only issue in dispute in this case is whether Appellants' claims fall within an exception to the waiver. Specifically, the parties dispute whether the exception listed in subsection (b) applies. Subsection (b) provides an exception to the waiver of governmental immunity for any "injury [that] arises out of, in connection with, or results from . . . assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, *deceit*, interference with contract rights, infliction of mental anguish, or violation of civil rights."[4]  Appellants argue that the trial court misinterpreted the statute under plain language analysis, principles of statutory

---

[2] *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 11, 24 P.3d 958 (internal quotation marks omitted).

[3] *Blackner v. State*, 2002 UT 44, ¶ 10, 48 P.3d 949.

[4] UTAH CODE § 63G-7-301(5)(b) (emphasis added).

construction, and controlling precedent. We address these issues in turn.

### A. The Plain Language of the Statute Applies the Exception to Third-Party Tortfeasors

¶9 "When interpreting a statute, we look first to its text."[5] When possible, we "carry out the legislative purpose of the statute as expressed through the enacted text."[6] This is not the first time we have had occasion to analyze Utah Code section 63G-7-301(5)(b). Cases from this court interpreting subsection (b) have uniformly held that the plain language of the statute forecloses Appellants' argument that the intentional torts listed must be committed by an employee of the State. In *Ledfors v. Emery County School District*, a minor complained to his school that "two fellow students had assaulted him several times."[7] Although the principal indicated he would handle the problem, the minor was left unsupervised and the two students "viciously beat" him.[8] We held that the government was immune from suit because subsection (b) "plainly does not allow suit against a governmental entity if the underlying 'injury . . . arises out of' an assault or battery."[9] Although the battery was committed by two students, not government employees, the court held that "the employment status of the assailant is irrelevant to the question of immunity."[10] It reasoned that "[t]he determinant of immunity is the type of conduct that produces the injury, not the status of the intentional tort-feasor whose conduct is the immediate cause of the injury."[11]

¶10 *Taylor ex rel. Taylor v. Ogden City School District*, decided three years after *Ledfors*, also dealt with the assault or battery

---

[5] *Richards v. Brown*, 2012 UT 14, ¶ 23, 274 P.3d 911.

[6] *Id.*

[7] 849 P.2d 1162, 1163 (Utah 1993).

[8] *Id.*

[9] *Id.* at 1165 (alteration in original).

[10] *Id.* at 1166.

[11] *Id.*

exception in subsection (b).[12] In that case, a middle school student pushed another student's hand through a window. The plaintiff sued the school for negligently failing to install safety glass in the window.[13] The court again held that the governmental entity was immune under subsection (b). It cited *Ledfors* to explain that the exception "places no importance on the status of the assailant."[14] Appellants in this case place great weight in the *Taylor* dissent, which found the statutory language ambiguous and used legislative history to conclude that *Ledfors* was wrongly decided.[15] Indeed, in dissenting, concurring, and majority opinions, this court has repeatedly criticized the broad scope of subsection (b).[16] The legislature considered, but never passed, an amendment narrowing

---

[12] 927 P.2d 159, 163 (Utah 1996).

[13] *Id.* at 160.

[14] *Id.* at 164.

[15] *Id.* at 167 (Durham, J., dissenting) ("The legislative history of the Act, viewed in the context of its purposes, strongly suggests that the most reasonable interpretation of [subsection (b)] is that the governmental entity retains immunity only where the injury is the result of an assault or battery committed *by a government employee*.").

[16] *See, e.g., Sanders v. Leavitt*, 2001 UT 78, ¶ 40, 37 P.3d 1052 (Durham, J., concurring) ("I feel constrained by stare decisis to join in the result of Part B of the majority's analysis. I wish to note, however, what I consider to be an ongoing problem created by this court's construction of [subsection (b)], one that I believe should be addressed by the legislature."); *Taylor*, 927 P.2d at 166 (Durham, J., dissenting) ("If the 'arises out of' language [in subsection (b)] applies to any private individual, its very breadth could lead to absurd and unfair results."); *Malcolm v. State*, 878 P.2d 1144, 1147 (Utah 1994) ("In holding that the state defendants are immune from suit [under subsection (b)], we are not unmindful of the grievous wrong done to plaintiff, nor do we discount the severity of her resulting physical and emotional injuries. Indeed, on these facts, the immunity from suit imposed by the legislature may seem unconscionably broad. Nevertheless, the remedy lies with that same legislature." (internal quotation marks omitted)).

the scope of this exception.[17] We therefore hold that under the broad scope of subsection (b), the deceit exception immunizes the government from suit even if the tortfeasor is not a government employee.

¶11   We find unpersuasive Appellants' argument that this case is distinguishable from our precedent analyzing subsection (b)'s assault and battery exceptions because the injury here arose from deceit.  Subsection (b) lists "assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, [and] violation of civil rights."[18]  The distinction between the first two intentional torts on that list (assault, battery) and the tenth (deceit) does not affect our plain language analysis of the statute.  The assault, battery, and deceit exceptions all immunize the government from suit even if the tortfeasor is not a government employee.

### B.  Applying the Deceit Exception to Third-Party Tortfeasors Does not Violate Rules of Statutory Construction

¶12  Both parties believe that subsection (5)(f) of the Governmental Immunity Act supports their interpretation of subsection (b).[19]  The subsection (f) exception applies when the injury arises out of "a misrepresentation by an employee whether or not it is negligent or intentional."  The State provides two different definitions of "deceit" in its brief.  First, citing *Bennett v. Jones, Waldo, Holbrook & McDonough,*[20] it contends that "Plaintiffs do not dispute that their injuries resulted from the tort of deceit," which consists of five elements:

---

[17] *See Taylor*, 927 P.2d at 169 n.7 (Durham, J., dissenting).  In 1995, the Utah Senate introduced a bill that would have added language to the governmental immunity statute stating that "except that this exception does not apply when . . . the assault or battery was not committed by an employee of a governmental entity" but the House never voted on the bill before the end of the session.  *Id.*

[18] UTAH CODE § 63G-7-301(5)(b).

[19] *Id.* § 63G-7-301(5)(b), (f).

[20] 2003 UT 9, ¶ 74, 70 P.3d 17.

1. A false representation of fact made by the defendant[.]

2. Knowledge or belief of the defendant that the representation was false (often called scienter).

3. An intention to induce the defendant to act or refrain from acting in reliance.

4. Justifiable reliance by plaintiff upon the representation in taking action or in refraining from it.

5. Damage suffered by plaintiff [as a result].[21]

Later in its argument, however, the State cites the *Oxford English Dictionary* to argue that "[d]eceit is 'the action or practice of deceiving someone by concealing or misrepresenting the truth.'" The State then contends that under this definition, subsection (f)'s exception for misrepresentation by a government employee would be superfluous if subsection (b) covers deceit by government employees only. Appellants reply that under the dictionary definition the State provides, "the State could never be sued for negligence that could somehow be tied to the misrepresentations of a non-governmental employee."

¶13 We clarify that subsection (b) contemplates only the intentional tort of deceit. It appears in a list of other intentional torts. Furthermore, *Rapp v. Salt Lake City* analyzed the deceit exception in subsection (b) and found immunity because a "review of plaintiff's complaint compels a conclusion that it is a tort action, alleging deceit."[22] *Jones, Waldo*, which set out the elements in the intentional tort of deceit, quoted *Tenneco Oil Co. v. Joiner*.[23] *Tenneco Oil* examines the Restatement (Second) of Torts and *Prosser, the Law of Torts* to

---

[21] *Id.* (alterations in original) (citation omitted).

[22] 527 P.2d 651, 655. The court quoted section 525 of the Restatement (First) of Torts to define deceit: "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act [or] refrain from action in reliance thereon in a business transaction is liable to the other for the harm caused to him by his justifiable reliance upon the misrepresentation." *Id.*

[23] 2003 UT 9, ¶ 74.

clarify that there is a difference between "[f]raud or deceit, in an intentional sense" and "negligent misrepresentation."[24]  In the Governmental Immunity Act, subsection (f) is broader than subsection (b).  Subsection (f) covers misrepresentation by a government employee, even if it is negligent or does not amount to deceit.  Deceit in subsection (b) refers to the intentional tort of deceit, not any action that could colloquially be described as deceitful.

¶14  While this statutory construction is required by the text, it leads to some anomalous results in application that are worth noting.  For one thing, the statute as written—immunizing all deceit but only some misrepresentation—puzzlingly affords greater immunity for the *more culpable* misconduct.  That seems backwards.  And even if that anomaly could be explained—e.g., by the notion that more culpable conduct might predictably cause greater harm and thus implicate a greater need to minimize governmental liability—the statute as written implicates another anomaly that is even more troubling:  It retains immunity for employee misrepresentations, but not for non-employee ones.

¶15  We see no rational policy basis for this application of the Governmental Immunity Act.  It cannot be explained by any difference in the degree of harm, as the employee and non-employee cases both involve the same misrepresentation (and thus presumably the same harm).  The only difference is the identity of the underlying tortfeasor, and it seems backward to provide immunity in the circumstance where the government retains greater control (over its employees) but not where its control is minimal (as with non-employees).

¶16 These anomalies do not rise to the level of absurdities justifying a decision to override the statutory text.  But they are sufficiently troubling that they seem worth flagging for consideration by the legislature in the event it sees fit to revisit the statute.

---

[24] *Tenneco Oil Co. v. Joiner*, 696 F.2d 768, 773 (10th Cir. 1982).

## C. *The Analysis of the Permit Exception in* Francis v. State *is Distinguishable*

¶17 Appellants next contend that *Francis v. State*,[25] which applied a separate subsection of the Governmental Immunity Act, compels the conclusion that the status of the tortfeasor matters.

¶18 In *Francis*, the Utah Division of Wildlife Resources (DWR) classified a bear that disrupted a campsite located on federal land as a "Level III nuisance" but gave up searching for it without alerting the people at the campsite of the danger.[26] When the bear killed a boy at the campsite, his parents sued the State for negligence. The DWR argued that it was immune from suit under Utah Code section 63G-7-301(5)(c), which provides that governmental entities retain immunity "if the injury arises out of, in connection with, or results from . . . the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization." The State argued the permit exception applied because the boy's death "arose out of the State's negligent failure to ask the [United States Forest Service] to close the site where the attack occurred."[27]

¶19 The *Francis* court conducted a plain language analysis and concluded that "to fall within the permit exception, *the governmental entity claiming immunity* must have either (a) issued, denied, suspended, or revoked or (b) failed or refused to issue, deny, suspend, or revoke" a permit.[28] Appellants argue that because in *Francis* the entity that issued the permit mattered, the entity that commits the intentional tort should also matter. But *Francis* specifically distinguished its subsection (c) permit analysis from case law analyzing subsection (b).[29] Furthermore, *Francis* explained that "the federal government had *exclusive* control over any authorization to use the campsite in question."[30] "[T]he federal government was the only entity that had the authority to issue, deny, suspend, or

---

[25] 2010 UT 62, 248 P.3d 44.

[26] *Id.* ¶ 6.

[27] *Id.* ¶ 8.

[28] *Id.* ¶ 15.

[29] *Id.* ¶ 17.

[30] *Id.* (emphasis added).

revoke any permit . . . or similar authorization related to the campground . . . [and] the State did not perform any act that falls within the scope of the permit exception."[31] The negligence alleged in *Francis* was therefore completely unrelated to the permit exception. In contrast, the complaint in this case alleges that absent the State's negligence, no deceit would have occurred.

¶20 Finally, we acknowledge that some subsections of the Governmental Immunity Act contemplate injury caused only by government actors, while others do not. For example, subsection (u) applies to any injury that arises out of "unauthorized access to government records, data, or electronic information systems by any person or entity," clearly contemplating injuries caused by non-employees.[32] On the other hand, subsection (f) explicitly applies to misrepresentation "by an employee."[33] Subsections (b) and (c) are not so explicit. But *Francis* and *Ledfors* are reconcilable because an exception for permits and authorizations clearly contemplates government action while an exception for assault, battery, or deceit does not.

### D. Subsection (b) Applies Even Though Appellants' Causes of Action Allege Negligence, not Deceit

¶21 Appellants next argue that none of the waiver exceptions apply because they "are suing for negligent supervision and failure to warn," not deceit, and the Governmental Immunity Act "does not immunize the State from its negligence simply because there may be another proximate cause of the harm suffered." In *Ledfors*, we found "no merit" to the "argument that the injuries alleged . . . arose from the failure to supervise rather than from a battery."[34] And we have consistently "rejected claims that have reflected attempts to evade these statutory categories by recharacterizing the supposed cause of the injury."[35] *Taylor* held that subsection (b)'s "language demands only that there be *some* causal relationship between the injury and

---

[31] *Id.* ¶ 16.

[32] UTAH CODE § 63G-7-301(5)(u).

[33] *Id.* § 63G-7-301(5)(f).

[34] *Ledfors*, 849 P.2d at 1166.

[35] *Id.*; *see also Taylor*, 927 P.2d at 163.

the risk provided for."[36] Subsection (b) applies in this case because, but for Mr. Higgins's deceit, Appellants' injuries would not have occurred.[37]

¶22 We also reject Appellants' contention that *Doe v. Arguelles*[38] "recogniz[ed] the viability of claims against the State for negligent supervision of a parolee" without restriction. That case nowhere mentions the assault or battery exceptions, nor was an argument addressing those exceptions presented in the parties' briefs. *Malcolm v. State*, on the other hand, established immunity under the assault or battery exceptions in a case alleging negligent supervision of a parolee.[39]

## II. THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED THE STATE'S MOTION TO DISMISS

¶23 Finally, Appellants argue that the dismissal of their complaint on the basis of governmental immunity was untimely. The court must "accept[] the factual allegations in the complaint as true" when it determines or reviews a motion for judgment on the pleadings.[40] And "[i]mmunity is an affirmative defense which must be proved by the defendant."[41] But "[i]n some instances . . . the existence of the affirmative defense may appear within the complaint itself."[42] In their complaint, Appellants alleged that the parolee "defrauded" them. As we explained above, "fraud or deceit, in an intentional sense," consists of five elements that together

---

[36] 927 P.2d at 163 (internal quotation marks omitted).

[37] *See id.* ("In this case, there is undoubtedly 'some' causal relationship between Zachary's injury and Trenton's assault upon him. But for the assault, Zachary's injuries would not have occurred.").

[38] 716 P.2d 279 (Utah 1985).

[39] 878 P.2d 1144, 1146–47 (Utah 1994).

[40] *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 3, 285 P.3d 1157 (internal quotation marks omitted).

[41] *Nelson ex rel. Stuckman v. Salt Lake City*, 919 P.2d 568, 574 (Utah 1996).

[42] *Tucker v. State Farm Mut. Auto. Ins. Co.*, 2002 UT 54, ¶ 8, 53 P.3d 947 (citing as an example a statute of limitations defense).

establish a cause of action in tort.[43] Although neither the complaint nor the response sets out these elements, the complaint's explanation of Mr. Higgins's Ponzi scheme satisfies the elements of deceit. And when the State responded that Appellants' injuries arose out of deceit, Appellants' response was that the deceit exception in subsection (b) was inapplicable to third parties, not that no deceit occurred. Furthermore, on appeal, Appellants concede "the fact that Appellants lost their investment in part due to Higgins' deceit." The district court did not err when it determined, based on the complaint, that the injuries alleged arose out of deceit and the State was therefore immune.

## CONCLUSION

¶24   Under the Governmental Immunity Act, the State is immune from suit where the injury arises out of deceit. The complaint in this case made clear that Appellants' injury was the result of a third-party's deceit. We therefore affirm the district court's dismissal of Appellants' complaint.

—————

[43] *Supra* ¶ 13 ("*Tenneco Oil* examines the Restatement (Second) of Torts and *Prosser, the Law of Torts* to clarify that there is a difference between '[f]raud or deceit, in an intentional sense' and 'negligent misrepresentation.'").