*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 44**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

RANDI MARIANI,
*Petitioner,*

*v.*

UTAH DEPARTMENT OF PUBLIC SAFETY-DRIVER LICENSE DIVISION,
*Respondent.*

No. 20230702
Heard September 6, 2024
Filed December 19, 2024

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Robert Faust
No. 200902808

Attorneys:

Caleb Bertch, Daniel F. Bertch, Cassandra Dawn,
Cottonwood Heights, for petitioner

Sean D. Reyes, Att'y Gen., J. Clifford Petersen, Asst. Solic. Gen.,
Salt Lake City, for respondent

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1   Randi Mariani crashed her motor scooter and sustained a serious injury during a driving skills test, which she was taking to obtain a motorcycle endorsement to her driver license. In the aftermath of the crash, the Utah Department of Public Safety-Driver License Division (DLD) denied Mariani's application for the license endorsement, and Mariani sued the DLD for negligently

causing her injury. The district court granted summary judgment to the DLD based on governmental immunity, and the court of appeals affirmed.

¶2   We granted certiorari to address whether the court of appeals erred in affirming the district court's determination that the DLD is immune from Mariani's suit under the Governmental Immunity Act of Utah (GIA). On certiorari, the case hinges on whether there is some causal relationship between the licensing denial and Mariani's injury.

¶3   Below, we explain our three-part method for analyzing cases in which the government asserts immunity under the current version of the GIA, and then we explain that the required causal relationship is lacking in this case. Accordingly, we conclude the DLD is not immune from suit under the GIA, and we reverse and remand to the court of appeals for further proceedings.

### BACKGROUND[1]

¶4   After obtaining a motor scooter, Mariani applied to the DLD for a motorcycle endorsement to be added to her Utah driver license. She passed the written motorcycle knowledge test and obtained a learner's permit. Then, she prepared for the skills test by riding her scooter and by practicing on the skills test course in the parking lot of the DLD's Heber City office.

¶5   In August 2019, Mariani went to the same course with a DLD examiner and took the skills test, which included a "quick stop" exercise. On her second attempt to perform the quick stop, Mariani lost control of her scooter and fell. The scooter landed on Mariani's right leg, injuring her. Mariani failed the skills test and was denied the motorcycle endorsement.

¶6   Mariani sued the DLD for negligence and sought damages for her physical injury, medical costs, and pain and suffering. She alleged that the quick stop exercise was positioned over hazards in the asphalt that caused her scooter to lose traction and fall on top of her. Thus, according to Mariani, the DLD breached its duty of reasonable care by, among other things, failing to inspect and discover unsafe conditions on the skills test course and failing to warn her of road hazards in the path for the quick stop.

---

[1] "On an appeal from a motion for summary judgment, we view the facts in the light most favorable to the non-moving party." *Cunningham v. Weber Cnty.*, 2022 UT 8, ¶ 3 n.1, 506 P.3d 575.

¶7 The DLD moved for summary judgment. Assuming its own negligent conduct for the purposes of the motion, the DLD argued that it was immune from suit under subsection 63G-7-201(4)(c) (licensing exception) of the GIA. The licensing exception states, in relevant part, that a governmental actor is immune from suit for an injury caused by negligence if the injury "arises out of or in connection with, or results from" the denial of a license or similar authorization. UTAH CODE § 63G-7-201(4)(c). The DLD argued that because Mariani's injuries "resulted from her application for a motorcycle endorsement," the "licensing exception" applied.[2]

¶8 The district court agreed with the DLD. It reasoned that the DLD controls the issuance of a driver license and that because Mariani's injury "arose out of the administration of her motorcycle skills test for the issuance of her license," she "cannot reasonably argue that her injuries have no causal relationship with her attempt to obtain a motorcycle endorsement." Accordingly, the court concluded that Mariani was precluded from suing the DLD for "her injuries suffered while taking the skills test."

¶9 The court of appeals affirmed the district court's decision. *Mariani v. Dep't of Pub. Safety*, 2023 UT App 79, ¶ 19, 534 P.3d 780. The court of appeals concluded, "It would be unreasonable to suggest that Mariani's injury—which occurred as a result of her crashing her scooter during the quick stop—did not originate from, flow from, or was not at least incident to the licensing approval process to obtain a motorcycle endorsement." *Id.* ¶ 17; *see also id.* ¶ 16 (citing UTAH CODE § 63G-7-102(1)(c)). We granted Mariani's petition for certiorari.

## ISSUE AND STANDARD OF REVIEW

¶10 Mariani contends that the court of appeals erred in affirming the district court's summary judgment determination

---

[2] The DLD also argued that it was entitled to summary judgment on the independent basis that before taking the skills test, Mariani signed a waiver agreeing to hold the DLD harmless for any damage or injury that may occur during the test. Neither the district court nor the court of appeals reached the merits of this alternative argument. *See Mariani v. Dep't of Pub. Safety*, 2023 UT App 79, ¶ 4 n.1, 534 P.3d 780. Because the issue is beyond the scope of our review and has not been briefed in this court, we do not address it and leave it for consideration on remand.

that the DLD is immune from her suit under the GIA's licensing exception. "On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same standard[] of review used by the court of appeals." *State v. Wilder*, 2018 UT 17, ¶ 15, 420 P.3d 1064 (cleaned up). Here, the district court's grant of summary judgment was based on its interpretation of the licensing exception. "Statutory interpretation and the grant of summary judgment are legal questions reviewed for correctness." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 7, 368 P.3d 846. "And we give the court of appeals' conclusions of law no deference." *Id.* (cleaned up).

## ANALYSIS

¶11   The GIA defines the broad immunity from legal action that state governmental entities and employees enjoy. *See generally* UTAH CODE §§ 63G-7-101 to -904. It provides, "A governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived in [the GIA]." *Id.* § 63G-7-101(3); *see also id.* § 63G-7-201(1) ("Except as otherwise provided in [the GIA], each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function.").

¶12 Under the present iteration of the GIA, waivers of immunity are found in section 63G-7-301. Of relevance here, the State has waived its immunity from suit "as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." *Id.* § 63G-7-301(2)(i). But that waiver is not absolute. Subsection 63G-7-201(4) excepts from that waiver suits for injuries that "arise[] out of or in connection with, or result[] from" certain conduct or conditions. *Id.* § 63G-7-201(4); *see also id.* § 63G-7-101(4) ("A governmental entity and an employee of a governmental entity retain immunity from suit if an injury arises out of or in connection with, or results from, conduct or a condition described in Subsection 63G-7-201(3) or (4), even if immunity from suit for the injury is waived under Section 63G-7-301."); *id.* § 63G-7-301(2)(i) (stating that the government's waiver of immunity for an employee's negligence is "subject to Subsections 63G-7-101(4) and 63G-7-201(4)").

¶13  In this case, the parties dispute whether the conduct or condition described in the GIA's licensing exception—codified at

subsection 63G-7-201(4)(c) — applies to shield the DLD from Mariani's lawsuit. The licensing exception states,

> A governmental entity, its officers, and its employees are immune from suit, and immunity is not waived, for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from . . . the issuance, denial, suspension, or revocation of, or the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization . . . .

*Id.* § 63G-7-201(4)(c).[3]

¶14 Also relevant here, the GIA defines the phrase "'[a]rises out of or in connection with, or results from,' when used to describe the relationship between conduct or a condition and an injury." *Id.* § 63G-7-102(1). The phrase means that "(a) there is some causal relationship between the conduct or condition and the injury; (b) the causal relationship is more than any causal connection but less than proximate cause; and (c) the causal relationship is sufficient to conclude that the injury originates with, flows from, or is incident to the conduct or condition." *Id.*

¶15 Relying on these statutes, the court of appeals agreed with the district court that the licensing exception applies to bar Mariani's suit. *Mariani v. Dep't of Pub. Safety*, 2023 UT App 79, ¶ 18, 534 P.3d 780. It concluded that Mariani's injury, which occurred during the quick stop, was "at least incident to the licensing approval process" and thus fell within the licensing exception's scope. *Id.* ¶¶ 16–17.

¶16 Mariani challenges that conclusion, contending that the licensing exception does not provide the DLD with immunity in this case. This issue presents questions of statutory interpretation, in which our "aim . . . is to ascertain the intent of the legislature." *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶ 15, 556 P.3d 21

---

[3] Like the court of appeals and unless otherwise noted, we cite the current version of the Utah Code because there have been no material changes since Mariani's injury in August 2019. *Cf. Peck v. State*, 2008 UT 39, ¶ 1 n.1, 191 P.3d 4 (applying the Utah Code in effect at the time of the plaintiff's injury).

(cleaned up). To discern that intent, we "look first to the plain and ordinary meaning" of the statutory terms, *Hertzske v. Snyder*, 2017 UT 4, ¶ 12, 390 P.3d 307 (cleaned up), and we "give effect to the plain language unless the language is ambiguous," *Wagner v. State*, 2005 UT 54, ¶ 10, 122 P.3d 599 (cleaned up). But before we address the merits of Mariani's argument, we pause to address the DLD's suggestion that we clarify how we analyze cases arising under the current version of the GIA. Then, we reach Mariani's argument, conclude that her points are well-taken, and thus reverse and remand for further proceedings.

## I. OUR TRADITIONAL THREE-PART METHOD OF ANALYZING GOVERNMENTAL IMMUNITY CASES STILL ALIGNS WITH THE GIA'S CURRENT STRUCTURE AND LANGUAGE

¶17 We first consider the DLD's invitation to revisit our framework for analyzing cases in which the government asserts immunity under the GIA. The DLD posits that the GIA's "restructured order" and "new statutory language" render our three-part method "analytically unnecessary."[4] We agree with the DLD that, in some cases, it may be unnecessary to analyze all three parts of our traditional analytical framework. However, in other cases, all three components must still be analyzed. Thus, we do not abandon or restate our three-part method. But we take this opportunity to describe how the GIA has been structurally revised and how our traditional framework works within those revisions.

¶18 We begin by describing the three-part method we have applied for at least three decades to determine whether a governmental actor is immune from suit under the GIA. *See, e.g.*, *Van de Grift v. State*, 2013 UT 11, ¶ 8, 299 P.3d 1043; *Ledfors v. Emery Cnty. Sch. Dist.*, 849 P.2d 1162, 1164 (Utah 1993). First, we assess whether the activity undertaken by the governmental actor is a "governmental function" and is thus immunized from suit by the GIA's general grant of immunity. *Ledfors*, 849 P.2d at 1164. Second, if the activity is a governmental function, we ask if "some other section of the [GIA] waived that blanket immunity." *Id.* And third,

---

[4] Although the DLD invites a reframing of our analytical method, it does not contend that its proposed reframing alters the result in this case. In fact, it argues that the court of appeals, which applied our traditional three-part framework, reached the right result. *See Mariani v. Dep't of Pub. Safety*, 2023 UT App 79, ¶¶ 6–7, 534 P.3d 780.

"if the blanket immunity has been waived," we assess whether the GIA contains "an exception to that waiver," resulting "in a retention of immunity against the particular claim asserted." *Id.*; *see also Van de Grift*, 2013 UT 11, ¶ 8.

¶19 The first step of the three-part method springs from the first provision in section 201 of the GIA. In the past, and still today, that provision in substance provides: "Except as otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function." UTAH CODE § 63G-7-201(1) (2024); *see also id.* (2008); *id.* § 63-30-3 (1989). Thus, to satisfy the first step, the injury at issue must result from the exercise of a "governmental function" as that term is defined in the GIA. *See id.* § 63G-7-102(5) (2024).

¶20 The next two steps of our analytical framework reflect the content and structure of an earlier version of section 301 of the GIA, titled "Waivers of immunity—Exceptions." As its title suggests, that section enumerated waivers of immunity in subsections 301(1), (2), (3)(a), and (4), and exceptions to those waivers in subsections 301(3)(b) and (5). *See id.* § 63G-7-301(1)–(4) (2008) ("Immunity from suit of each governmental entity is waived as to" the listed items); *id.* § 63G-7-301(3)(b), (5) (immunity from suit "is not waived . . . if the injury arises out of, in connection with, or results from" the listed conduct or conditions). Consistent with the ordering of those subjects, these two steps call on courts to examine, first, whether immunity is waived for a particular activity and, second, whether the GIA provides an exception to that waiver on the basis that the injury arose out of certain conduct or conditions.

¶21 But, as the DLD correctly points out, since 2015, the current version of the GIA largely reverses the order of these two subjects. The excepted conduct and conditions are now articulated first—in section 201. *See id.* § 63G-7-201(2)–(4) (2024). And the waivers of immunity are articulated second—in section 301. *See id.* § 63G-7-301(1)–(2). The DLD argues that this reordering suggests that we should view the excepted conduct and conditions not as "exceptions" to waiver, but as "immunity-invoking conditions," for which immunity was "never waived in the first place." And, the DLD continues, if a court concludes that an "immunity-invoking condition" applies, it can declare a governmental actor immune without having to address the second step in the three-part method, that is, whether immunity is waived.

¶22 We agree with the DLD that there are instances where courts need not resolve the second inquiry in the three-part method—whether government immunity is waived. *See infra* ¶¶ 24–25. But we don't find it useful or consistent with the GIA to refer to the conduct and conditions identified in section 201 as "immunity-invoking conditions."

¶23 The excepted conduct and conditions identified in section 201 are still exceptions to the waivers described in section 301—even if their placement in the act precedes the waivers. That is how the excepted conduct and conditions are described in subsection 101(4), where the GIA states that the government retains immunity from suit if the injury arises out of certain conduct or conditions, "*even if* immunity from suit for the injury is waived under" section 301. UTAH CODE § 63G-7-101(4) (emphasis added). And continuing to view them as exceptions to waivers of immunity is consistent with the GIA as a whole. After all, the GIA provides that governmental actors are immune from suit for *all* governmental functions absent a waiver. *See id.* §§ 63G-7-101(3), -201(1). Thus, the conduct and conditions identified in section 201 do not *invoke* immunity. Instead, they *retain* immunity in the face of a waiver that would otherwise apply.[5]

¶24 But regardless of what label we apply to the excepted conduct and conditions under section 201, we clarify that although our traditional three-part method for analyzing questions of governmental immunity still applies, it is not always necessary to answer all three inquiries. And there may be times when it is more analytically efficient for a court to address the steps in a different order.

---

[5] If we viewed the excepted conduct and conditions in section 201 as anything but exceptions to waiver, they would be superfluous. *See Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (stating that we avoid interpretations that render "portions of the statute superfluous" (cleaned up)). Because governmental immunity is the default under the GIA, UTAH CODE §§ 63G-7-101(3), -201(1), it would be unnecessary to articulate additional instances under which the government is immune if there were no waivers of immunity. The excepted conduct and conditions articulated in section 201 only become relevant if viewed as exceptions to the waivers articulated in section 301.

¶25   For example, if it is apparent that an injury arises out of an excepted conduct or condition under section 201, it might be more efficient to resolve the third step of the analysis—whether there is an exception to waiver—before resolving the second step of the analysis—whether immunity was waived under 301. That is because if an excepted conduct or condition applies, dismissal would be appropriate regardless of how the waiver inquiry is resolved. Conversely, if it is apparent that immunity has not been waived under section 301, regardless of whether an excepted conduct or condition under section 201 applies, it might be more efficient to begin with the question of waiver. And that is because dismissal would be appropriate regardless of how the exception inquiry is resolved.

¶26   But we cannot say that all three inquiries are no longer relevant because, in many cases, courts will be required to address all three to resolve the governmental immunity question. For example, if a court were to conclude that the government has waived immunity under section 301 (step two), it also would have to address whether the government nevertheless retains immunity if the government claims that a section 201 excepted conduct or condition applies (step three). Similarly, if a court were to reject the government's claim that the injury arose out of a section 201 conduct or condition (step three), the court would still have to address any contested claim that the government waived its immunity (step two).[6]

¶27   This case comes down to whether subsection 201(4)(c)'s licensing exception, which contains an excepted conduct or condition, applies to immunize the DLD from Mariani's negligence claim. Here, steps one and two of our analytical framework are not in dispute. The parties agree, at least for purposes of summary

---

[6] This analysis may be slightly more complicated if the waivers in subsections 301(2)(j), 301(3), and 301(4) are implicated. These provisions, which are not at issue in this case, appear to claw back waivers in certain circumstances notwithstanding the potential applicability of section 201 waiver exceptions. *See* UTAH CODE § 63G-7-301(2)(j), (3), (4). Because these provisions are not before us, we won't comment on them further except to note that they are unique and may require additional analytical steps. However, whether governmental immunity applies will still ultimately turn on the questions of waiver and exceptions to waiver.

judgment, that a governmental function is at issue (step one). They also agree for purposes of summary judgment that Mariani's injury was proximately caused by the DLD's negligence, and that negligence is something for which governmental immunity is generally waived under section 301 (step two). Thus, we must decide only whether the licensing exception applies (step three). We turn to that question now.

## II. THE COURT OF APPEALS ERRED IN CONCLUDING THAT THERE IS A CAUSAL RELATIONSHIP BETWEEN THE LICENSING DENIAL AND MARIANI'S INJURY AND THAT THE DLD THUS IS IMMUNE FROM MARIANI'S SUIT

¶28 The court of appeals concluded that the GIA's licensing exception applies to retain the DLD's immunity from Mariani's suit. The court explained, "It would be unreasonable to suggest that Mariani's injury—which occurred as a result of her crashing her scooter during the quick stop—did not originate from, flow from, or was not at least incident to the licensing approval process to obtain a motorcycle endorsement."[7] *Mariani v. Dep't of Pub. Safety*, 2023 UT App 79, ¶ 17, 534 P.3d 780.

¶29 Mariani identifies two related problems with this reasoning. First, she contends that the court of appeals should have focused its analysis on the licensing denial, not the "licensing approval process." Second, she contends that the court of appeals erred in concluding that the necessary causal relationship between the licensing denial and her injury existed, arguing that because the DLD's action of "denying her motorcycle endorsement [occurred] after she had already wrecked and been injured," the DLD's excepted conduct could not have caused her injury. We agree on both fronts.

### A. The Relevant Conduct or Condition Is the Denial of the Motorcycle Endorsement, Not the Process or Administration of the Skills Test

¶30 Mariani first contends that under the licensing exception, the conduct or condition that the court of appeals should have

---

[7] Similarly, the district court reasoned that Mariani's injury "arose out of the *administration* of her motorcycle skills test for the issuance of her license," and the district court concluded that Mariani "cannot reasonably argue that her injuries have no causal relationship with her attempt to obtain a motorcycle endorsement." (Emphasis added.)

considered is the DLD's denial of her application for a motorcycle endorsement instead of the licensing approval process. This point is well-taken.

¶31   As discussed, governmental entities are immune from suit "if an injury arises out of or in connection with, or results from, conduct or a condition described in Subsection 63G-7-201(3) or (4)." *See* UTAH CODE § 63G-7-101(4). The conduct or condition that the DLD relies on here is found in the licensing exception of subsection 201(4)(c). That provision's plain language refers to "the issuance, denial, suspension, or revocation of, or the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization." *Id.* § 63G-7-201(4)(c).

¶32   The licensing exception's reference to the "denial . . . of . . . any . . . license, . . . or similar authorization" applies here to the DLD's denial of Mariani's application for a motorcycle endorsement to her driver license. *See id.* But the licensing exception does not reference the licensing "process" or "activities." *See id.* Because "we presume that the expression of one term should be interpreted as the exclusion of another," we presume that subsection 201(4)(c)'s omission of language specific to the testing or licensing process and activities was "purposeful." *See Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (cleaned up).

¶33   We see further support for that presumption when we contrast subsection 201(4)(c)'s narrow language with the broad language of other excepted conduct and conditions in subsection 201(4). For example, governmental entities and employees "are immune from suit . . . if the injury arises out of or in connection with, or results from: . . . (i) an *activity* of the Utah National Guard, [or] . . . (s) the *activity* of: (i) providing emergency medical assistance; (ii) fighting fire; [or] (iii) regulating, mitigating, or handling hazardous materials or hazardous wastes." UTAH CODE § 63G-7-201(4)(i), (4)(s)(i)–(iii) (emphases added). The legislature's use of broad terms like "activities" in other subsections of the same statute suggests that it did not intend to include all licensing-related activities within subsection 201(4)(c). If it had, we presume it would have done so expressly.

¶34   Thus, we give effect to the licensing exception's plain language and focus on the DLD's "denial . . . of . . . any . . . license . . . or similar authorization" to Mariani as the relevant conduct or condition that would potentially trigger an exception to waiver here. *See id.* § 63G-7-201(4)(c). Put differently, the plain language

does not support reading the licensing exception to encompass the testing process more broadly.

*B. The DLD's Denial of the Motorcycle Endorsement Did Not Cause Mariani's Injury, and Therefore the Licensing Exception Is Inapplicable*

¶35  Mariani further contends that the court of appeals erred in concluding that her injury bore sufficient causal relation to the licensing denial to trigger an exception to the section 301 waiver of immunity for the DLD's alleged negligence. In her view, because the DLD's action of "denying her motorcycle endorsement [occurred] after she had already wrecked and been injured," the DLD's conduct was "not antecedent to [her] harm" and therefore could not be a "causal factor," leaving the licensing exception inapplicable to her claim. This point is also well-taken.

¶36 As discussed, subsection 201(4)(c) renders the DLD immune if Mariani's "injury arises out of or in connection with, or results from" its denial of a motorcycle endorsement. *See* UTAH CODE § 63G-7-201(4)(c). Further, Utah Code subsection 63G-7-102(1) defines the phrase "[a]rises out of or in connection with, or results from," to mean that

> (a) there is some *causal* relationship between the conduct or condition and the injury;
>
> (b) the *causal* relationship is more than any causal connection but less than proximate cause; *and*
>
> (c) the *causal* relationship is sufficient to conclude that the injury originates with, flows from, or is incident to the conduct or condition.

*Id.* § 63G-7-102(1) (emphases added).[8]

¶37  The court of appeals focused on the words "incident to" in subsection 102(1)(c), concluding that Mariani's injury was "at least

---

[8] The court of appeals correctly recognized, and Mariani does not dispute, that Utah Code subsection 63G-7-102(1) provides the operative causation standard with respect to the "relationship between the conduct or condition and the injury." *See Mariani*, 2023 UT App 79, ¶¶ 12–15 (quoting UTAH CODE § 63G-7-102(1)). To avoid confusion, we add that this inquiry is distinct from the question of whether the government's negligence proximately caused a plaintiff's injury. *See* UTAH CODE § 63G-7-301(2)(i). Here, the latter is not at issue. *Supra* ¶ 27.

incident to the licensing approval process to obtain a motorcycle endorsement." *See Mariani*, 2023 UT App 79, ¶ 17. The DLD does not expressly defend the court's focus on the "licensing approval process" as the relevant conduct. Still, it defends the court's larger reasoning, arguing that immunity applies to "conduct that is 'incident to' the denial of a license," and that Mariani's injury "was incident to" the denial of her license because she was injured while taking a skills test to obtain that license. The DLD thus concludes that "[t]he close causal connection between Mariani's injury and DLD's denial of her license met the statutory test."

¶38 But focusing on the "incident to" phrase (or other broad terms here) bypasses the overarching requirement in subsections 102(1)(a) through (c). That requirement is that there be a "causal" relationship between the conduct or condition (here, the DLD's denial) and the plaintiff's injury (here, Mariani's injury sustained in the crash). *See* UTAH CODE § 63G-7-102(1). In other words, the relationship between the DLD's denial and Mariani's injury cannot be just any relationship, as it seems the DLD's argument would have it. Rather, the relationship must be causal. *Id.*

¶39 The plain and ordinary meaning of causal relationship is a relationship "marked by cause and effect." *See Causal*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/causal (last visited Dec. 12, 2024). A "cause" is "[s]omething that produces an effect or result." *Cause*, BLACK'S LAW DICTIONARY (12th ed. 2024). And it would be illogical for an effect to materialize before its cause.

¶40 Yet, the court of appeals' reasoning means a "causal relationship" exists between the denial and Mariani's injury even though Mariani was injured before the DLD denied her license and even though the denial did not cause her injury. Because this reasoning allows the effect to precede the cause, it describes a relationship that is not causal, falling short of the GIA's causal requirement for immunity. *See* UTAH CODE §§ 63G-7-102(1)(a), -201(4)(c). And because the overarching causal relationship is not established, we need not parse the language of subsections 102(1)(b) and (c).

¶41 No matter how broadly or narrowly we construe "incident to," the GIA's definition of a "causal relationship" between the conduct or condition and the injury requires that the conduct or condition led to the injury complained of. *See id.* § 63G-7-102(1)(a). To read it differently, as requiring only some relationship between the conduct or condition and the injury, would require reading

"causal" out of the definition. But the definition's plain terms require a "causal relationship" between the conduct and the injury. Here, the relevant conduct under the licensing exception—the denial of a license—did not cause Mariani's injury.[9] Thus, the exception does not apply.

## CONCLUSION

¶42  We conclude that the court of appeals erred in affirming the district court's determination that the GIA's licensing exception applies to these undisputed facts, thereby providing immunity to the DLD. We agree with Mariani that given the statutory language, the court of appeals should have focused on the licensing denial itself. We further agree with Mariani that the requisite causal relationship is lacking between the DLD's denial of her motorcycle endorsement and her injury. Accordingly, the licensing exception does not apply and the DLD is not immune from Mariani's suit. We reverse the court of appeals' decision and remand for further proceedings.

------------

[9] The DLD asserts that because Mariani was injured while taking the test, her "tipping over the scooter led directly to the denial." Under this view, Mariani's injury caused the denial, which is the converse of what the statute requires to confer immunity. Subsection 201(4) renders the DLD immune if the injury "arises out of or in connection with, or results from" the excepted conduct or condition. UTAH CODE § 63G-7-201(4). Similarly, subsection 102(1)(c) describes the necessary causal relationship as one where the injury "originates with, flows from, or is incident to the conduct or condition." *Id.* § 63G-7-102(1)(c). Both articulations suggest that the injury must flow or result *from* the conduct or condition—not the other way around.